MATHEWS, Justice.
This is an appeal in a personal injury case.
The primary question to be answered is as follows: Is the owner of a taxicab liable to a drunken passenger for injuries received by the passenger under the circumstances and evidence shown to exist in this case?
It is unnecessary to discuss the voluminous pleadings as the case was tried before a jury on the pleadings as finally framed. At the conclusion of appellee’s case the appellant made a motion for directed verdict which was refused. This motion was renewed at the conclusion of all- of the testimony and was denied. The jury returned a verdict in favor of the plaintiff-appellee in the sum of '$20,000. ' Th'e appellant then filed a motion' for a judgment notwithstánd- *354 ing the verdict, or in the alternative a motion for new trial, both of which. were denied.
The appellee claims in the first count of the complaint that the company was liable because of a breach of duty which was negligence; that the plaintiff-appellee was intoxicated to such a degree that he was physically and mentally irresponsible and engaged the taxicab to take him to his home on 18th Street but instead the taxicab took him to a house on 18th Terrace, which was about a block from his residenceand, that the negligence consisted of the following: (1) in parking the taxicab on the left-hand or wrong side of the street; (2) permitting or instructing the plaintiff to alight from the cab on a sharp, jagged, perilous roadway, whereas the area in front of his residence was smooth and soft; (3) refusing to take plaintiff to his requested destination; and (4) failing or refusing to take plaintiff to the front door of his residence, driving away and leaving him a block from his residence when plaintiff-appellee was unable to stand.
The second count of the complaint contained all of the allegations of the first count and in addition alleged that the plaintiff-appellee was leaning against the taxicab for support and the driver wilfully or negligently drove away which caused him to fall.
The answer contained a denial of all of the plaintiff’s allegations except those not material here and also a plea of contributory negligence.
An undisputed fact is that appellee, Castleberry, had been drinking for two and one-half days and nights. Castleberry testified that he had a vague recollection of going from one bar to another but that his mind was a complete blank as to the circumstances of the accident ; he did remember going to a 7th Avenue bar but had no recollection of what occurred after that. It is undisputed that the cab driver reluctantly accepted Castleberry as a passenger at the 7th Avenue bar. Two young men, who were friends of Castleberry, asked the cab driver if he would take Castleberry home because a policeman had cautioned them that he would run Castleberry in. The friends went to the back of a bar and brought Castleberry out. He walked with them without assistance. He didn’t want to go home and argued with his friends to let him stay. The friends gave the cab driver an address on NW 18th Street. The cab driver drove down 7th Avenue and when in the vicinity of 18th Street, Castleberry motioned with his arm to turn West on that street, which was 18th Terrace instead of 18th Street. After the cab driver turned in on 18th Terrace, the passenger pointed out the first house and the cab driver stopped the cab, parking on the left-hand side of the street, in front of the house pointed out to him. The cab driver testified that he got out, opened the door on the right-hand side and said, “Come on, son, let’s go in the house now and get to bed.” Castleberry got out of the cab but refused to go in the house. Some argument ensued between Castleberry and the driver while they were standing near the right-hand front door of the cab. The driver attempted to persuade Castleberry to go in the house but he refused to do so and insisted that the cab driver take him to the “Village Barn” where he could do some more drinking.
While this argument was going on four neighbors heard the loud talking. Two witnesses testified they heard Castleberry say that he didn’t live there and pointed toward 18th Street, and that the cab driver then left Castleberry standing in the street. They testified that the cab driver got in the cab on the driver’s side and pulled away, and as this happened Castleberry collapsed, breaking the fall with his hands. All four witnesses agreed that plaintiff was not hurt when he fell the first time. Castleberry attempted to stand up and as he did so, he fell the second time, hurting his left ear. There is no evidence from any witness that Castleberry was leaning against the cab for support or that the movement of the cab caused him to fall. The driver of the cab testified, and it is uncontradicted, that Castleberry was standing on the street by the right front door of the cab and was clear of the cab as the driver pulled away.
*355 The appellee contends that appellant is liable not only because he (appellee) was obviously and apparently drunk, but because he was “physically and mentally irresponsible and incapable * * * unable to walk or stand without assistance and helpless to exercise ordinary measures for his own protection;” that the appellee was delivered by friends to the driver with specific instructions to transport him to a specified address and that the driver ignored such instructions and delivered him to the wrong address; that he (the cab driver) parked on the wrong side of the thoroughfare, instructed appellee to disembark into the middle of a sharp, jagged, perilous coral rock street; that appellee begged the driver to take him to his home and the driver refused to do so or to make any provision for the plaintiff’s protection, and in lieu thereof, drove off, leaving ap-pellee to collapse in the middle of the street.
There can be no question that appellee had imbibed a large quantity of intoxicating liquors for two and one-half days and nights. The uncontradicted testimony is that appellee was able to walk to the taxicab ; that on the way to his home he pointed to a street where he wished to turn; that he pointed to a particular house as being his home; that when the taxicab driver stopped, he alighted therefrom under his own power; that he stood in the street, sometimes with his hand on the door of the cab, for 8 or 10 minutes while he argued with the taxi driver; that he insisted that the taxicab driver take him to the “Village Barn”; he knew where the “Village Barn” was and knew it was a place where he could get more intoxicating liquor. We do not find any evidence in the record that he begged the. cab driver to take him to his home while they were arguing in the street, as the appellee now contends. If he knew where his home was and begged the cab driver to take him home, he would not have been mentally incapable. The fact that he insisted on going to a drinking place called the “Village Barn” where he c.ould get more liquor showed that he was not mentally incapable.
In the case of Swilley v. Economy Cab Co. of Jacksonville, Fla., 46 So.2d 173, 177, this Court held that partial intoxication does not excuse want of ordinary care and prudence on the part of the passenger and that the carrier need exercise no higher degree of care toward a person partially intoxicated than is required in the case of persons not intoxicated.
Appellee further insists, in the case at bar, that the carrier was negligent in delivering the passenger to a place other than that given in the directions and instructions • of the two friends. The cab driver was asked on cross examination.
“Q. * * * your original instructions were to deliver him to the address on 18th Street; is that correct? A. But his instructions supercedes the other.
“Q. Well, wasn’t he mumbling 18th Street? A. Fie pointed to the street, and then he pointed to the house.”
It was not negligence for the cab driver under the circumstances to take the passenger to the street and house pointed out by him even though such place and house was not the street and number given to the cab driver by the two friends of the passenger at the bar where he got in the cab. The cab driver was justified in believing that the passenger knew more about what-street he lived on and the house than the friends at the bar.
In the brief of appellee it is insisted that he was evicted or that physical force was used to get him out of the cab. The record contains no testimony to that effect nor is there any testimony from which such a conclusion can be. drawn.
It is further insisted that the cab driver not only refused to take the passenger home after he had. begged the driver to do so, but that the cab driver was guilty of negligence because he did not make any provisions for the plaintiff’s protection. We have heretofore pointed out that there was no testimony to the effect that the appellee begged *356 the driver to take him home. It is difficult to understand what provision the cab driver could have made for the appellee’s protection. The driver tried to get the passenger in the house which he had pointed out as being the passenger’s home, but the passenger refused to go. Certainly the cab driver was not called upon to physically pick his passenger up, carry him in his arms into the house and place him upon a bed. Had he attempted to do this, and, while so attempting, the passenger had gotten loose or had fallen or anything else had happened to him, the claim would then be made that the cab driver was- guilty of negligence or a breach of duty or some other tort. It appears from the record that the cab driver did refuse to take the passenger back to another barroom whére he could obtain more intoxicating liquor and did all he could to persuade the passenger to go into the house pointed out to the driver as the home of the passenger.
It is also contended by the appellee that the cab driver left the 'passenger in a place of danger or persuaded him to get out of the automobile into the middle of .the street which was a place of danger. There is no merit in this contention.
Attempt is made to compare this case with the case of Swilley v. Economy Cab Co. of Jacksonville, supra. The one count in that case which was held good and upon which trial was had alleged that the cab driver accepted the service of the drunken passenger when the driver knew that the road in question was a heavily traveled road and was a place of danger. The first count in the Swilley case was held insufficient.'
Count one in the Swilley case, supra, after alleging that the passenger was mentally and physically incapable because of his intoxication, further alleged that while the cab driver was repairing a blown-out tire the passenger got out of the cab and wandered about the highway; that the driver did nothing to restrain ' him by putting him in a place of safety or took any necessary steps to prevent him from being injured; that while he was so wandering around’another car traveling át á 'high rate of speed hit him and seriously injured him. In the majority opinion in the Swilley case, this Court held:
“ * * * To have held the taxicab company liable for the safety of its passenger under the ■ circumstances shown by the first count of the declaration would háve been to have made of the defendant an absolute insurer of the safety of its passenger under a condition not of its own making, extending even to the point of making it an insurer against the possible negligence of some third person. This the law does not exact of a common carrier merely by reason of the fact that it accepts a person for carriage.”
The second count in the Swilley case alleged that the cab driver accepted the service of the passenger in changing a tire, and the cab driver allowed the plaintiff in rendering such assistance to place himself in a place of danger upon a heavily, traveled highway. In sustaining the second count of the declaration, the Court said:
“ * * * The act of accepting the services of the plaintiff amounted, under the circumstances, to a negligent act of commission on the part of the defendant’s driver which, when coupled with the alleged negligent failure of the driver to do anything to remove the plaintiff from his perilous position after the services had been accepted constituted, in our opinion, a breach of the duty which the defendant owed to the plaintiff * *
In the instant case, the record fails to show that the place where the passenger got out of the cab was a heavily traveled street or a dangerous highway and there is no allegation or showing that the cab driver accepted the services of the passenger to help him do anything which would put the passenger in a. place of danger.
It was alleged that the place where appellee got out of the cab was rough and rocky and that the place in front of his home where he may have gotten out was smooth and soft. The cab driver was not *357 charged with notice of such fact if it was true. However, we fail to find any testimony in the record sustaining the allegations of such differences in the place where the passenger got out of the cab and the place at his home where he may have gotten out of the cab.
It appears in this case that the ap-pellee, and he alone, was responsible for whatever degree of drunkenness existed at the time of the accident. Voluntary drunkenness or intoxication is no excuse for negligence. See 38 Am.Jur., § 203, p. 883, and cases therein cited.
In the case of Boggs v. Butler, 129 Fla. 324, 176 So. 174, 175, it was contended by the appellant that a judgment against him should be reversed because he was drunk and incapable of giving his consent to another person to drive his automobile. This Court said:
“His defense savors' of that of the young man in an early Florida case who contributed to the death of his parents but later, in an action' affecting the tragedy, pleaded with the court to be merciful to him because he was an. orphan. It also, reminds us of the fellow who ran over the stop light, but on being pursued and captured by a cop, his wife entreated the latter to pay no attention to him because he was drunk.”
There was considerable testimony in the case at bar about the passenger giving the cab driver a one dollar bill which the driver kept while he should have given the passenger thirty cents in change. Such testimony was not material as to the question of negligence or contributory negligence. If the passfengér was over-charged thirty cents, he may have, had some other kind of action.
We have examined all of the testimony as disclosed by the record and the same reveals that there was “no genuine issue as to any material fact.” It does not show actionable negligence against the appellant. It sho.ws that the fall was the result of the voluntary intoxication of the ap-pellee.
Having reached the conclusion .which we have, it is unnecessary to -pass upon other questions presented.
The motion for directed verdict in fávor of the appellant should have been granted.
Reversed, with directions to proceed further in accordance with this opinion. ■ •
ROBERTS, C. J., and TERRELL and SEBRING, JJ., concur.